REYES, Appellant, v. LAWRY and another, Respondents.

*November 4—November 29, 1966.*

114

For the appellant there was a brief and oral argument by *S. A. Schapiro* of Milwaukee.

For the respondents there was a brief by *Wickham, Borgelt, Skogstad & Powell,* and oral argument by *Robert C. Watson,* all of Milwaukee.

CURRIE, C. J.  Plaintiff on this appeal seeks a new trial because of the following alleged errors on the part of the trial court:

(1)  Failure to admit evidence of a custom that drivers passed cars in the west traffic lane on the right by utilizing the gravel shoulder.

(2)  Refusal to instruct the jury with respect to right-of-way.

(3)  Unduly emphasizing plaintiff's negligence in the instructions.

(4) In sustaining the jury finding with respect to comparative negligence.

## Evidence of Custom.

Although there was a small stretch of gravel shoulder to the *south* of the Clark station driveway as well as to the north thereof, there was a flared widening of the pavement on North Thirteenth street just north of the intersection. Plaintiff attempted to introduce evidence to establish the fact that it was customary for drivers traveling south toward the intersection to pass traffic stopped in the west traffic lane on the right in order to reach the widened piece of pavement. The offered evidence indicated that drivers passing on the right used the west shoulder as a pathway for the right wheels of their vehicles. The trial court sustained an objection to this testimony. Plaintiff then made an offer "to show proof that on July 26, 1964, it was the custom at the place where the impact occurred for cars to travel in the place where the plaintiff's car was at the time and place, and that other cars did it at that time and place also by custom."

The court refused the offer on the ground that a custom in violation of a safety statute would not justify plaintiff's conduct. Plaintiff relies on sec. 346.08, Stats., which in part allows passing on the right when a driver can do so *"without driving off the pavement or main-traveled portion of the roadway."* (Italics supplied.) Plaintiff contends that custom would have established that the shoulder at the time and place was a "main-traveled portion" of the roadway.

In *Raim v. Ventura* [1] this court stated:

". . . a custom which is contrary to law cannot be given credence by the court." [2]

[1] (1962), 16 Wis. (2d) 67, 113 N. W. (2d) 827.
[2] Id. at page 72.

*Paulson v. Hardware Mut. Casualty Co.*[3] involved an action for damages sustained as the result of a collision between the plaintiff who was traveling east on U. S. Highway 8 and the defendant who was traveling west and turned south across plaintiff's lane of travel in an attempt to enter a town road. The defendant contended that the turn was made in the customary way. The court stated:

"A custom which violates an express command of a statute will not serve as a justification of the violator's conduct."[4]

This is the case here. Sec. 346.08, Stats., in part provides:

"The operator of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety and *only if he can do so without driving off the* pavement or *main-traveled portion of the roadway,* and then only under the following conditions:
"(1) When the vehicle overtaken is making or about to make a left turn; . . ." (Italics supplied.)

The evidence clearly establishes that plaintiff was driving at least partially off the pavement and on the shoulder. Custom is inadmissible to establish that the shoulder was a "main-traveled portion of the roadway" inasmuch as sec. 340.01 (54), Stats., defines "roadway" as follows:

" 'Roadway' means that portion of a highway between the regularly established curb lines or that portion which is improved, designed or ordinarily used for vehicular travel, *excluding the berm or shoulder.* In a divided highway the term 'roadway' refers to each roadway separately but not to all such roadways collectively." (Italics supplied.)

---

[3] (1957), 2 Wis. (2d) 94, 85 N. W. (2d) 848.
[4] Id. at page 98. See also 21 Am. Jur. (2d), Customs & Usages, p. 690, sec. 15; and Anno. 77 A. L. R. (2d) 1327, 1330.

Reading secs. 340.01 (54) and 346.08, Stats., together, it is apparent that under any circumstances the shoulder of the roadway is excluded from the term "roadway."

*Right-of-Way.*

The trial court refused plaintiff's requested instruction on right-of-way on the ground that right-of-way was not an issue in the case because plaintiff was traveling partially off the pavement. However, the trial court did include the following instruction in his charge:

". . . a statute [346.34] provides that no person shall turn his vehicle into a private driveway unless and until such movement can be made with reasonable safety."

Plaintiff relies upon sec. 346.18 (7), Stats., in contending that the trial court erred in refusing to instruct on right-of-way. Sec. 346.18 (7), provides:

"The operator of any vehicle intending to turn to the left into an alley or private driveway across the path of any vehicle approaching from the opposite direction shall yield the right of way to such vehicle."

Ch. 346, Stats., is part of the Vehicle Code comprising Title XXXII. Sec. 340.01 provides that the words and phrases in chs. 340 to 349 are to have the meanings designated in sec. 340.01, "unless a different meaning is expressly provided or the context clearly indicates a different meaning." "Right-of-way" is defined as follows:

" 'Right of way' means the privilege of the immediate use *of the roadway*." (Italics supplied.) [5]

As previously noted, "roadway" is defined so as to *exclude* the shoulder of a paved highway.[6]

[5] Sub. (51), of sec. 340.01, Stats.
[6] Sub. (54), of sec. 340.01, Stats.

In view of these definitions we conclude that the trial court properly ruled that there was no issue of right-of-way presented inasmuch as it is undisputed that plaintiff was operating his car at least partially on the shoulder. In so concluding, we are not unmindful that an opposite result could be achieved by holding that a person operating a vehicle partially on the paved portion of a highway is entitled to the same statutory right-of-way he would possess if he were operating wholly thereon. Not only would this be a strained construction but it might give a driver, such as plaintiff, who is guilty of a statutory violation by passing on the right, the benefit of a right-of-way the legislature never intended.

Plaintiff cites *Paster v. Mutual Auto Ins. Co.*[7] for the proposition that there is an absolute duty to yield the right-of-way when a left-hand turn is made in the face of oncoming traffic. That case dealt with a left turn at an intersection and not into a private driveway. Moreover, the plaintiff therein was traveling *on the roadway proper,* and not on, or partially on, the shoulder. In that respect the case is clearly distinguishable from the case at hand.

### Emphasizing Plaintiff's Negligence in Instructions.

The trial court, in instructing the jury, on three separate occasions referred to its finding that plaintiff was negligent as a matter of law. Also prior to argument of counsel the jury was advised by the court of this finding. Plaintiff contends that the trial court thereby unduly emphasized this finding to the prejudice of the plaintiff, and failed to counteract the alleged undue emphasis by a proper cautionary instruction that the jury was not to be influenced by this finding in answering the other questions of the verdict.

---

[7] (1960), 10 Wis. (2d) 314, 102 N. W. (2d) 772.

With respect to the question in the verdict which inquired whether plaintiff's negligence was causal the trial court instructed the jury that it should reach a determination "wholly uninfluenced by the fact that the court rather than the jury answers the question of negligence with respect to [plaintiff's] driving to the right. . . ." The court did not give a similar precautionary instruction with respect to the comparative-negligence question.

In *Field v. Vinograd* [8] this court was confronted with the precise question now being considered. In that case the trial judge found the plaintiff, a child pedestrian, causally negligent as a matter of law in failing to yield the right-of-way to a vehicle operated by one Vinograd. The trial judge in instructing the jury several times referred to his finding of causal negligence. On motions after verdict the judge ordered a new trial because he felt the jury had been unduly influenced in comparing the negligence of the parties by the matter-of-law finding which had been reiterated several times during the course of the instructions. On appeal the order was reversed with instructions that the jury verdict be reinstated. In reversing, this court stated:

"It may be that in comparing the negligence in such a case a jury will give great weight to the finding by the court . . . [T]he problem is inherent in a situation where the court is compelled to make such a finding. But it can and should be met by instructions making it clear that no greater weight should be given such a finding than should be given to a finding made by the jury. . . .

"Repetition, of itself, is not to be condemned. It would be improper only where it was clearly so superfluous as to create in the minds of the jury the impression that the finding of the court carried greater weight than its own findings." [9]

[8] (1960), 10 Wis. (2d) 500, 103 N. W. (2d) 671.
[9] Id. at page 509.

In *Niedbalski v. Cuchna* [10] we were faced with a similar problem. The trial court there found the plaintiff negligent as a matter of law. The jury attributed 65 percent of the aggregate causal negligence to plaintiff. As in the instant case, the trial court's precautionary instruction was confined to the causation question. In the course of our opinion we stated:

"We recognize the possibility that because of respect for the trial judge's experience and knowledge of the law, and confidence in his impartiality, a jury may give more weight to a finding made by the judge than to a similar finding which it makes for itself. It is possible for the same reason that when it reaches the comparison question, it may give disproportionally greater importance to negligence found by the judge than to negligence found by the jury. We suppose there might be cases where on review it so clearly appears from the circumstances that this must have happened, that a new trial should be had in the interest of justice. *We decline, however, to adopt a rule based on a premise that a jury attributes disproportionate importance to negligence found by the judge in all, or a substantial number of the cases in which findings are made as a matter of law.*" (Emphasis supplied.) [11]

Still more recently this court was called upon to consider the problem of the weight which a jury attributes to a finding of negligence as a matter of law by the trial court. The opinion laid down the following test of when this court should interfere with a verdict attacked on the basis of the jury having accorded undue weight to such a finding:

"To conclude that a jury has placed improper weight on a finding by the trial court, it must appear from all the facts, and the record taken as a whole, that such

[10] (1961), 13 Wis. (2d) 308, 108 N. W. (2d) 576.
[11] Id. at page 313.

influence could be the *only* explanation for the negligence apportionment." (Emphasis supplied.) [12]

In the instant case it would have been preferable if the trial court had given a precautionary instruction when it instructed the jury with respect to the comparative-negligence question as well as the causation question. However, we find no prejudicial error in the instructions as given inasmuch as plaintiff failed to request that a precautionary instruction be given. In *Moritz,* infra, this court said that where the complaining party does not request such an instruction he "cannot complain about the failure to give it." [13]

We have reviewed the evidence for the purpose of ascertaining whether the apportionment of negligence by the jury reflects the probability that justice miscarried because of the trial court's finding of negligence as a matter of law on the part of plaintiff because of the failure of the trial court to give a precautionary instruction applicable to the apportionment question of the verdict. In this instance it is wholly immaterial whether the judgment of dismissal was grounded on a finding of 51 percent or 92 percent of negligence against plaintiff. Either apportionment would bar plaintiff from recovering a judgment for damages.

[12] *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. (2d) 13, 19, 20, 133 N. W. (2d) 235. See also Professor Richard V. Campbell, Wisconsin Law Governing Automobile Accidents—Part II, 1962 Wisconsin Law Review, 557, 571,
"*iii Where Judge Rules on One or More Acts of Negligence.* . . . It is clear in law that in administering comparative negligence the jury should give exactly the same weight to its own findings of causal negligence as it gives where the judge rules on the issue as a matter of law. Whether a party has been prejudiced in this respect depends on an examination of the entire record and not merely upon the comparative negligence instructions and findings."
[13] *Supra,* footnote 12, at page 20.

A finding that plaintiff was less negligent than defendant would have been contrary to the great weight of the evidence. Not only was plaintiff guilty of a serious statutory infraction in utilizing the shoulder in passing to the right of the southbound cars in the west traffic lane, but his speed of 17 to 20 miles per hour while operating on the rough terrain of the shoulder and so close to the traffic signals at the intersection then set on red, could also have been found by the jury to have been excessive. Furthermore, he was at least as guilty of negligent lookout as was defendant since the line of cars extending from the intersection equally obscured the vision of each driver to the approach of the other. The jury's apportionment of negligence does not under these circumstances suggest to us that justice probably miscarried.

### Sustaining of Jury's Finding With Respect to Comparative Negligence.

As pointed out *supra* there was ample credible evidence for the jury to find plaintiff more causally negligent than defendant. Thus there was no error on the part of the trial court in sustaining the jury's comparison. The only possible relief from the finding of the jury would have been for the trial court to have granted a new trial in the interest of justice. The trial court in its memorandum opinion on motions after verdict made it very clear that it did not find any miscarriage of justice. We agree.

*By the Court.*—Judgment affirmed.